**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Legrand Kunz,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Smith's Food & Drug Centers, Inc. doing business as Fry's Food Stores,<br><br>　　　　Defendant. | No. CV-09-1645-PHX-GMS<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment (Doc. 47) filed by Defendant Smith's Food & Drug Centers, Inc., et al. ("Fry's"). For the reasons set forth below, the Court grants Defendant's Motion.

## BACKGROUND

Plaintiff filed a Complaint alleging age discrimination and retaliation in violation of the Arizona Civil Rights Act ("ACRA"), and the Age Discrimination in Employment Act ("ADEA") in addition to several contract-based claims.[1] Plaintiff began working for Smith's[2]

---

[1] Local Rule of Civil Procedure 56.1(b) requires a "party opposing a motion for summary judgment [to] file a statement, separate from that party's memorandum of law, setting forth: (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact." "Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record

1  as an assistant meat manager in 1987. (Doc. 48). Around 2000, Plaintiff was transferred to
2  work under the supervision of Kevin Fitzgerald ("Fitzgerald"), a meat supervisor. On May
3  29, 2004, Plaintiff fell while at work, resulting in a workers' compensation injury for which
4  he was off work until October 2004.  In June 2004, while Plaintiff was still on leave, a clerk
5  with the third-party provider, Concentra, mistakenly indicated that Plaintiff could return to
6  work. When he did not, Fry's terminated his employment for job-abandonment based on that
7  error. On the same day, Plaintiff contacted Concentra to correct the work-status error, and
8  later that day Fry's contacted Plaintiff to inform him of Concentra's error.

Around October 12, 2004, Plaintiff returned to work and expressed an interest in being promoted to Fitzgerald. In response, Fitzgerald stated, "you got me in trouble bro." (Doc. 48, ¶ 22). Plaintiff believes that Fitzgerald made this comment because someone related to the workers' compensation action reprimanded Fitzgerald for Plaintiff's erroneous termination. In early November 2006, Plaintiff again expressed interest in an assistant meat manager position and Fitzgerald promised him the position. (Doc. 48, ¶¶ 24–25). However, Fitzgerald later told Plaintiff that the store volume did not warrant an assistant meat manager, and did not promote him. During this time, Plaintiff alleges that he performed the duties of an assistant meat manager even though Fry's compensated him at the rate of a meat cutter. On November 22, 2006, Kunz contacted Fry's Labor Relations Manager, Lin Mealey, and told her, among other things, that Fitzgerald would not promote him as promised. At the latest, Plaintiff knew that Fry's would not promote him by early January 2007. After

---

where the fact finds support." Under that rule, the moving party's separate statement of facts must be "*deemed admitted . . . if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts*." Plaintiff has failed to provide a controverting statement of facts that either disputes Defendant's statement of facts or references specific admissible portions of the record that establish a genuine issue of material fact. Accordingly, the Court must treat Defendant's statement of facts as admitted for purposes of this motion.

[2] The Kroger Co. acquired Smith's Food & Drug Stores in 1999 and at that time elected to merge Fry's and Smith's and operate the Arizona stores as "Fry's." (Doc. 48, ¶ 5).

determining that the store in question only required two levels of management – a meat manager and a trainee – Fry's filled the position promised to Kunz with a meat manager trainee instead.

In July 2007, Kunz contacted Fry's Labor Relations Department and complained that Fitzgerald had retaliated against him for "worker's comp and FMLA" in 2004.[3] Plaintiff indicated his intent to quit and followed up with a fax and letter, dated July 20, 2007, reiterating the events of 2004 and complaining about his failure to be promoted. The last day Plaintiff reported to work was July 28, 2007. Plaintiff exhausted his leave time and then resigned, effective September 1, 2007. Sometime between July 28, 2007 and September 1, 2007, while exhausting his sick leave, Plaintiff moved to Nevada, where he started working at Smith's in its meat department.

On November 20, 2007, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant, alleging discrimination based on his age in violation of the ADEA. Plaintiff also asserted that he was retaliated against. Plaintiff filed the instant lawsuit on March 26, 2009, appearing to assert the following claims: (1) violation of ACRA, A.R.S. § 41-1463; (2) age discrimination and retaliation pursuant to the ADEA, 29 U.S.C. § 621 *et seq.*, Title VII, 42 U.S.C. § 1981; (3) intentional interference with an employment relationship; (4) breach of the covenant of good faith and fair dealing; and (5) "breach of the covenant of fair employment act." Defendant seeks summary judgment on all of Plaintiff's claims.[4]

---

[3] Plaintiff has not set forth claims for either workers' compensation retaliation or FMLA retaliation.

[4] The Complaint makes passing reference to discrimination on the basis of Plaintiff's sex and race, however Plaintiff fails to allege any facts or provide any evidence whatsoever to support such a claim. All the facts alleged in Plaintiff's EEOC charge, Complaint, and Response relate to age discrimination only. Accordingly, the Court disregards Plaintiff's isolated references to Title VII, which only applies to discrimination on the basis of an individual's "race, color, sex, national origin, or religion," 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981, which provides that all persons "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." *See White v. Wash. Pub. Power*

**DISCUSSION**

**I.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). When the nonmoving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**II.    Analysis**

    **A.    Counts 1 & 2: Age Discrimination Claims**

        **1.    Statute of Limitations**

Plaintiff sets forth claims for age discrimination and retaliation[5] pursuant to the ADEA

---

*Supply Sys.*, 692 F.2d 1286, 1290 (9th Cir. 1982) ("It is well settled that section 1981 only redresses discrimination based on plaintiff's race.").

[5] To make a prima facie case of retaliation, Plaintiff must produce evidence that he engaged in a protected activity, the Defendant subjected him to a materially adverse action, and that there was a causal link between the protected activity and the adverse action. *See Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 642 (9th Cir. 2003). Plaintiff alleges that he was retaliated against for filing his EEOC charge. (Doc. 1, Ex. A, ¶ 13). Plaintiff cannot demonstrate that there was a causal link between the protected activity and the adverse employment action where Plaintiff resigned, effective September 1, 2007, but filed his EEOC Complaint nearly 3 months later, on November 20, 2007. Even if Plaintiff's Complaint could

- 4 -

1  and an analogous Arizona statute, A.R.S. § 41-1463. Defendant seeks dismissal of Plaintiff's
2  age-related claims because they are barred by the statute of limitations relevant to filing
3  EEOC charges. According to 42 U.S.C. § 2000e-5(e), "the employee must file a charge with
4  the EEOC within 300 days of the alleged unlawful employment practice in order to preserve
5  the claim for a subsequent civil action." *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891
6  (9th Cir. 2005). It is undisputed that Plaintiff filed his EEOC charge on November 20, 2007.
7  (Doc. 48, Ex. 4). Moreover, with respect to counts one and two, Plaintiff asserts that
8  Defendant's alleged unlawful employment practices "include but are not limited to
9  Defendant's treatment, demotion, failure to promote, and constructive discharge." (Doc. 1,
10 Ex. A, ¶¶ 13,16). To the extent these discrete incidents of disparate treatment occurred prior
11 to January 24, 2007 (i.e. 300 days before November 20, 2007), they are barred by the statute
12 of limitations. Thus, Plaintiff's claims based on mistaken termination in 2004 and his failure
13 to be promoted in October 2004, and again in November 2006, are time-barred, while his
14 alleged constructive discharge in July 2007 is not. The Supreme Court has explained:

> [D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act . . . . The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

20 *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Court further
21 elaborated that each "[d]iscrete act[] such as termination, failure to promote, denial of
22 transfer, or refusal to hire . . . constitutes a separate actionable 'unlawful employment
23 practice'" for the purposes of triggering the statute of limitations period. *Id.* Accordingly,
24 Fry's mistaken termination of Plaintiff in 2004 and failure to promote him in 2004 and 2006
25 are discrete discriminatory acts barred by the statute of limitations. *See id.* at 114.

---

be construed as alleging retaliation based on his worker's compensation and FMLA actions in 2004, he has failed to provide any admissible evidence to support this assertion.

- 5 -

In his Response, Plaintiff seems to suggest that his claims are not barred by the statute of limitations because "contact with human resources and retaliation continued until August 15, 2007." (Doc. 57). However, the Ninth Circuit has held that "[a]bsent special circumstances, a single act by an employer adverse to an employee's interests, such as a discharge, layoff, or failure to transfer or promote, begins the running of the statute of limitations and the natural effects of the allegedly discriminatory act are not regarded as 'continuing.'" *London v. Coopers & Lybrand*, 644 F.2d 811, 816 (9th Cir. 1981). The Court has repeatedly held that a "mere continuing impact from past violations is not actionable." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quoting *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 238–39 (9th Cir. 1991) (internal quotations omitted)); *see also Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became the most painful."). Kunz's cause of action for failure to be promoted accrued at the latest in early January 2007, when he learned that Fitzgerald would not be promoting him to assistant meat manager. (Doc. 48, ¶ 31). This places the failure to promote beyond the limitation period. Therefore, Kunz's subsequent "contact with human resources" is merely the continuing effect of denying him the promotion.

Accordingly, the only qualifying adverse employment action alleged by Plaintiff is his alleged constructive discharge in July 2007. Plaintiff may rely on incidents occurring prior to the limitation period as "background evidence" to support his discriminatory constructive discharge claim, but cannot base his ADEA and ACRA claims on his mistaken termination in 2004 or his failure to be promoted.

### 2. *McDonnell Douglas* Framework

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In the absence of direct evidence of age discrimination, Plaintiff relies on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

1  Under this approach, Plaintiff must first establish a prima facie case of age discrimination by
2  showing that (1) he was a member of the protected class (at least age 40), (2) performed his
3  job satisfactorily, (3) was subjected to an adverse employment action, and (4) employees who
4  were both substantially younger and similarly situated were treated more favorably. *See Diaz*
5  *v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207–08 (9th Cir. 2008); *see also Coleman v.*
6  *Quaker Oats Co.*, 232 F.3d 1271, 1280–81 (9th Cir. 2000) (discussing elements in the
7  context of termination). If Plaintiff establishes a prima facie case, the burden of production
8  shifts to Defendant to offer a legitimate, non-discriminatory reason for the adverse
9  employment action. *Diaz,* 521 F.3d 1207–08. If it does so, Plaintiff must then show that
10 Defendant's reason is pretext for age discrimination, either directly by persuading the court
11 that a discriminatory reason more likely motivated Defendant or indirectly by showing that
12 Defendant's explanation is unworthy of credence. *Id*. at 1212.

13 Because Plaintiff has not introduced any direct evidence of age discrimination, the
14 *McDonnell Douglas* burden-shifting framework applies. Defendant does not seem to dispute
15 that Plaintiff was at least 40 years old and that he was performing his job satisfactorily at the
16 time of his alleged constructive discharge. Defendant does allege, however, that Kunz's
17 allegations "did not render his employment at Fry's sufficiently intolerable to justify his
18 resignation." (Doc. 47). This relates to the third element of Plaintiff's prima facie case,
19 namely whether or not he can establish that he suffered constructive discharge, an adverse
20 employment action.

21 Constructive discharge occurs "when the working conditions deteriorate, as a result
22 of discrimination, to the point that they become sufficiently extraordinary and egregious."
23 *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (citations omitted).  To
24 survive summary judgment, "a plaintiff must show there are triable issues of fact as to
25 whether a reasonable person in his position would have felt he was forced to quit because of
26 intolerable and discriminatory working conditions." *Hardage v. CBS Broad., Inc.*, 427 F.3d
27 1177, 1184 (9th Cir. 2005), *as amended by*, 433 F.3d 672 (9th Cir. 2006); *see also Penn.*
28 *State Police v. Suders,* 542 U.S. 129, 146 (2004) (plaintiff must show that "the abusive

- 7 -

1  working environment became so intolerable that her resignation qualified as a fitting
2  response"). To establish that he was constructively discharged, a plaintiff must at least show
3  some aggravating factors, such as a continuous pattern of discriminatory treatment.
4  *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996); *Watson v.*
5  *Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987). Despite being granted extensions
6  for both fact discovery and filing a Response (Doc. 40, 56), Plaintiff, who bears the burden
7  of establishing a prima facie case for discrimination, has failed to provide any evidence,
8  beyond his own affidavit, to establish that Fry's engaged in a continuous pattern of
9  discriminatory intent based on his age. The Ninth Circuit has refused to find a "genuine
10 issue" where the only evidence presented is "uncorroborated and self-serving" testimony. *See*
11 *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996); *see also Forsberg v. Pac. Nw.*
12 *Bell Tel. Co.*, 840 F.2d 1409, 1418–19 (9th Cir. 1988) (stating that conclusory allegations of
13 discrimination are insufficient to avoid summary judgment).

14       Defendant provides a copy of Plaintiff's July 20, 2007 letter to Fry's, sent just prior
15 to his resignation, in which he reiterates the events of his wrongful termination in 2004 and
16 complains of Fitzgerald's repeated failure to promote him to assistant meat manager because
17 of his age. (Doc. 48, Ex. 4) ("I have asked to be promoted 8 to 10 times until now it has
18 become a joke."). The fact that Plaintiff continued to work for Fry's under the supervision
19 of Fitzgerald until July 2007, several years after the discriminatory treatment he complains
20 of commenced, undermines the requirement that his working conditions were so
21 "sufficiently extraordinary and egregious" as to force a reasonable person to quit. *See, e.g.,*
22 *Poland v. Chertoff*, 494 F.3d 1174, 1185 (9th Cir. 2007) (holding that continuing to work for
23 five months before deciding to retire and three months thereafter "[a]s a mater of law, [ ] are
24 not the actions of someone who finds his working conditions so intolerable that he felt
25 compelled to resign"). Even more, because "constructive discharge cannot be based upon the
26 employee's subjective preference for one position over another," Kunz's ongoing desire to
27 be promoted to assistant meat manager is insufficient to establish constructive discharge. *Id.*
28 (quoting *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 755 (5th Cir. 1986), *aff'd in part and*

*remanded in part*, 491 U.S. 701 (1989)). Finally, in his Response, Plaintiff asserts that two weeks after his July 2007 letter, which led Fry's to initiate an investigation beginning on July 25, 2007, he had not heard back and so "it was the decision of the Plaintiff to transfer to Smith's in Reno." (Doc. 57). Again, there is nothing to suggest that Kunz's working conditions rose to the level of constructive discharge.

Even if Plaintiff had been able to establish that Fry's actions amounted to constructive discharge, he has failed to provide a single example of a similarly situated employee who received more favorable treatment. His Complaint states generalized allegations regarding "younger employees," and only makes passing reference to a younger 32-year-old meat cutter who was promoted to assistant meat manager. (Doc. 1, Ex. A, ¶ F).[6] Where "[p]laintiff has failed to provide sufficient admissible evidence of the qualifications of the [younger and allegedly favored employee, ] . . . the Court cannot determine whether the younger employee and Plaintiff were similarly situated." *Tempesta v. Motorola, Inc.*, 92 F.Supp.2d 973, 981 (D. Ariz. 2000). Plaintiff has provided no evidence regarding the qualifications of the 32-year old meat cutter who was allegedly promoted to the assistant meat manager position promised to Plaintiff, nor has he provided any corroborating evidence to support his contention. Meanwhile, Defendant has submitted evidence indicating that no one received the position promised to Plaintiff; a meat manager trainee was hired instead. (Doc. 48, ¶ 36). Because Plaintiff has not satisfied his burden of presenting evidence that would allow a reasonable jury to conclude that he was constructively discharged and treated more harshly than other similarly situated employees, he has failed to meet his burden under the *McDonnell Douglas* framework. Plaintiff has failed to establish a prima facie case of age discrimination, and Defendant is entitled to summary judgment on the ADEA claim.

ACRA makes it unlawful for an employer "[t]o discharge any individual or otherwise

---

[6] Plaintiff's EEOC Complaint mentioned that Andy, a 28-year old who was less qualified than Plaintiff, filled the assistant meat manager position which was denied to Plaintiff while at store #621. Plaintiff has not mentioned Andy in any of his submissions before this Court.

- 9 -

1 to discriminate against any individual with respect to the individual's compensation, terms, 2 conditions or privileges of employment because of the individual's race, color, religion, sex, 3 age, disability or national origin." A.R.S. § 41-1463(B)(1). Age discrimination claims under 4 the ACRA are analyzed under the same *McDonnell Douglas* framework as age 5 discrimination claims under the ADEA. *See Love v. Phelps Dodge Bagdad, Inc.*, 2005 WL 6 2416363, *7 (D. Ariz. 2005) (citing *Timmons v. City of Tucson*, 171 Ariz. 350, 830 P.2d 871, 7 875 (App. 1991)). Accordingly, Defendant will be granted summary judgment on the ACRA 8 claim for the same reasons as the ADEA claim.

### 3.   Hostile Work Environment

Interpreting Kunz's charge liberally, the facts alleged could be construed as also raising a claim of a hostile work environment pursuant to the ADEA and ACRA, although Plaintiff only generally alleges a claim on this basis. (Doc. 1, Ex. A, ¶¶ 7, G). Defendant seeks summary judgment on grounds that Plaintiff's claim is barred by the statute of limitations, and in the alternative, that Kunz can not establish a prima facie case for hostile work environment.

A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). For the purposes of a hostile work environment claim, it does not matter that some of the component acts of the hostile work environment fall outside the statutory time period provided that at least one act contributing to the claim occurs within the filing period. *Morgan*, 536 U.S. 117. If this is the case, the entire time period of the hostile environment may be considered to determine liability. *Id*. Because Plaintiff's allegation of constructive discharge in July 2007 falls within the statutory period, the claim is not time-barred.

Even though the hostile work environment claim is not barred by the statute of limitations, Plaintiff has nonetheless failed to state a prima facie case. To establish a prima facie hostile work environment, Plaintiff must show that he was subjected to verbal or physical conduct, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive

- 10 -

1 work environment. *See Vasquez*, 349 F.3d at 642. Plaintiff must also prove that the
2 harassment took place because of his age. *See Nichols v. Azteca Rest. Enters., Inc*., 256 F.3d
3 864, 872 (9th Cir. 2001). To determine whether the alleged discriminatory conduct is
4 sufficiently abusive, courts consider the "frequency of the discriminatory conduct; its
5 severity; whether it is physically threatening or humiliating, or a mere offensive utterance;
6 and whether it unreasonably interferes with an employee's work performance." *Faragher v.*
7 *City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal quotation marks omitted).

8 Neither Plaintiff's Complaint nor his Response indicate what instances of abusive
9 verbal or physical conduct he relies on for his hostile work environment claims. The only
10 factual allegations that could potentially be construed as harassment include the following:
11 (1) while filling out paperwork related to his injury, someone "joked" that Plaintiff would
12 never work at that particular store again (Doc. 48, ¶ 11); (2) while on leave Plaintiff was
13 incorrectly terminated based on an error made by Concentra (*Id*. at ¶ 14); (3) when Plaintiff
14 asked Fitzgerald for a promotion on October 12, 2004, he responded "you got me in trouble
15 bro" (*Id*. at ¶ 22); (4) three months after being transferred to a different store, Fitzgerald saw
16 Plaintiff and said, "Oh, you still here? I thought you would have quit by now!" (Doc. 1, Ex.
17 A, ¶ G; Doc. 57-1, ¶ 7); (5) when Plaintiff asked another supervisor, Jim Cannon, why
18 Fitzgerald would not promote him, he responded: "well if you would learn to walk on your
19 own two feet instead of others you might be promoted" (Doc. 1, Ex. A, ¶ F; Doc. 57-1, ¶ 6);
20 and (6) Defendant did not transfer Plaintiff from Fitzgerald's supervision despite his repeated
21 requests (Doc. 48, ¶¶ 44, 45). Even considering all of these examples, Plaintiff is still unable
22 to establish the first element of this claim. Plaintiff has failed to direct the Court to any
23 admissible evidence that would suggest that any of Defendant's alleged comments or actions
24 were because of Kunz's age. Furthermore, while these isolated comments and incidents may
25 be construed as offensive, there is no evidence that they were either severe or pervasive
26 enough to interfere with Plaintiff's employment and to create an abusive work environment.
27 "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will
28 not amount to discriminatory changes in the terms and conditions of employment." *Nichols*,

256 F.3d at 872 (quoting *Faragher*, 524 U.S. at 788); *see Vazquez*, 349 F.3d at 644 ("Two isolated offensive remarks, combined with Vasquez's other complaints about unfair treatment, . . . [are] not severe or pervasive enough to create a hostile work environment."). Plaintiff has failed to demonstrate a triable issue as to the existence of an age-based hostile work environment claim because the few instances of hostility alleged by Plaintiff are not related to his age and are, in any event, insufficient as a matter of law to demonstrate a hostile work environment. Thus, summary judgment is appropriate.

### B. Counts 3 & 4: Intentional and Improper Interference with Employment Relationship and Breach of Covenant of Good Faith and Fair Dealing

Plaintiff alleges claims for intentional interference with a contract and breach of the covenant of good faith and fair dealing. In his deposition, Plaintiff asserts that the collective bargaining agreement (CBA) between the union and Fry's is the contract at issue in both of these claims.[7] (Doc. 48, Ex. 1, 135). He further testifies that both of the claims are premised on the fact that he was doing the job of an assistant manager but was paid the lower wages of a meat cutter, and that Fitzgerald did not promote him. (*Id*. at 135–36). Defendant asserts that both of these contract-based claims fall within Fry's CBA, which specifically covers "transfers, promotions, and wage rates" (Doc. 48, Ex. 2, ¶¶ 3, 5), and therefore are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, which exclusively governs suits for breach of a collective bargaining agreement. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983). Under section 301, courts apply substantive federal law to labor contract disputes, and federal courts are authorized to fashion a body of federal common law to govern disputes arising out of labor contracts. *See Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 209 (1985). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement [ ], and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993 (9th Cir. 1987) (citing

---

[7] In his Complaint, Plaintiff indicates that he entered into a "union contract" with Fry's in 1994. (Doc. 1, Ex. A, ¶ A).

- 12 -

*IBEW v. Hechler*, 481 U.S. 851, 857–58 (1987); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1048 (9th Cir. 1987)); *see also Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If resolution of the state-law claim depends upon the meaning of the CBA, the application of state law is preempted, and federal labor-law principles must apply. *Lingle v. Norge Div. of Magic Chef, Inc.*, 480 U.S. 399, 406 (1988). Thus, state-law claims are preempted if they require interpretation of a CBA. *Id.*

Because Plaintiff has failed to provide any evidence to contradict Defendant's assertion that promotions and wages are covered in the CBA, and the outcome of Plaintiff's claims appears to depend on the terms and provisions of the CBA, counts three and four are preempted by section 301. Thus, Kunz's claims for improper interference and breach of covenant of good faith are "converted by operation of law into a section 301 federal cause of action to enforce rights covered by the collective bargaining agreement." *Harris v. Alumax Mill Prod., Inc.*, 897 F.2d 400, 403 (9th Cir. 1990); *see also Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) ("Mere omission of reference to LMRA section 301 in the complaint does not preclude federal subject matter jurisdiction. The court's recharacterization of [the] complaint as one arising under section 301 is required by federal preemption doctrines.").[8]

Even after characterizing Plaintiff's claims as pursuant to section 301, he fails to establish a genuine dispute of fact regarding alleged violations of his rights, as covered by the collective bargaining agreement. Indeed, Plaintiff has neither indicated which terms or provisions of the collective bargaining agreement Defendant has allegedly violated nor has he submitted a copy of the agreement in order for the Court to make a determination. Accordingly, counts three and four are dismissed for failure to raise a genuine issue of material fact.

---

[8] Although Plaintiff had not mentioned LMRA § 301 in his complaint, in his Response, he indicates that his intentional interference claim is based on violation of 29 U.S.C. § 185 (Section 301). (Doc. 57).

### C.     Count 5: Breach of Covenant of "Fair Employment Act"

Finally, Defendant seeks summary judgment on Plaintiff's claim for breach of covenant of the "Fair Employment Act," which Plaintiff clarifies in his Response as a claim pursuant to the Arizona Employment Protection Act ("AEPA"). The AEPA provides several scenarios in which an employee may sue for wrongful termination. A.R.S. § 23-1501(3). In his Response, Plaintiff appears to base his AEPA claim on two such scenarios: 1) "employer has terminated the employment relationship of an employee in breach of an employment contract," and 2) "employer has terminated the employment relationship of an employee in violation of a statute of this state." A.R.S. § 23-1501(3)(a),(b). (Doc. 57). Under the second scenario, Plaintiff specifically alleges that the Defendant terminated him "while on workers comp and FMLA." (Doc. 57). Both of these alleged scenarios fail as a matter of law.

To the extent Plaintiff bases his AEPA claim on breach of his employment contract, which Plaintiff concedes is the CBA in his case (Doc. 47, p. 3), that claim is preempted by section 301, as previously discussed. Plaintiff has failed to raise a genuine issue of material fact with respect to the alleged breach of the CBA. To the extent Plaintiff's AEPA claim is based on violation of the FMLA, this fails to state a claim upon which relief may be granted because FMLA violations are not within the parameters of the AEPA. *Lombardi v. Copper Canyon Acad., LLC*, 2010 WL 3775408, \*6 (D. Ariz. Sept. 21, 2010). And to the extent Plaintiff's claim is based on violation of Arizona's workers compensation statutes, his claim is time-barred. Plaintiff's mistaken termination while he was on leave for his workers' compensation injury occurred in June 2004. AEPA provides that claims for wrongful termination must be brought within one year after the cause of action accrues. A.R.S. § 12-541(4). Kunz filed his AEPA action nearly four years after it was barred by the applicable one-year statute of limitations. Defendant will be granted summary judgment on Plaintiff's AEPA claim.

/ / /

/ / /

/ / /

- 14 -

1 **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment
2 (Doc. 47) is **GRANTED**.   The Clerk of the Court is directed to terminate this action.
3    DATED this 21st day of March, 2011.

*A. Murray Snow*
G. Murray Snow
United States District Judge